IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FRANK DWIGHT MACK,          *
                            *
        Plaintiff,          *
                            *
    v.                      *              CV 118-095
                            *
TI'QUITA MILES,             *
                            *
        Defendant.          *

---

**O R D E R**

---

Before the Court is Ti'Quita Miles's ("Defendant") Motion to
Dismiss. (Doc. 4.) After due consideration and for the following
reasons, the motion to dismiss is **GRANTED**.

## I. BACKGROUND

On the evening of March 31, 2017, Frank Dwight Mack
("Plaintiff") — while incarcerated at the Augusta State Medical
Prison in Grovetown, Georgia — was stabbed nine times by a fellow
inmate (the "Attacker"). (Compl., Doc. 1, ¶¶ 1, 4, 6.) Plaintiff
alleges that Defendant was the acting booth officer that evening,
and, while performing the official count, Defendant "opened the
door to Dorm 3 while the door to Dorm 2 was open," which allowed
the Attacker to gain access to Dorm 2 and stab Plaintiff. (Id.
¶¶ 7-8.) Plaintiff was taken to a nearby hospital later that night
or early the next morning for treatment related to the stabbing.
(Id. ¶ 10.)

On May 24, 2017, Plaintiff filed a case in this Court, CV 117-061 ("Case I"). (Case I Compl., Doc. 1.) On April 26, 2018, this Court dismissed Plaintiff's case for failure to exhaust administrative remedies. (Case I Order, Doc. 19.) Sometime thereafter, Plaintiff was released from prison. (See Compl., ¶ 5.) On May 25, 2018, Plaintiff filed the instant case asserting a claim, pursuant to 42 U.S.C. § 1983, against Defendant in her individual capacity for her alleged deliberate indifference to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment. (Id. ¶ 13.) On July 30, 2018, Defendant filed a Motion to Dismiss. (Doc. 4.) Plaintiff filed a response in opposition (Doc. 5), and Defendant filed a reply in support (Doc. 7).

Defendant argues the claim against her should be dismissed under (1) Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim; and (2) The doctrine of qualified immunity, which shields government officials performing discretionary functions from civil liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." (Br. Supp. Mot. to Dismiss, Doc. 4-1, at 3-8); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As discussed below, in determining whether qualified immunity applies, the Court must first analyze whether Plaintiff validly states a claim under the Eighth Amendment. Thus, although

2

Defendant separately analyzed her arguments, the Court analyzes them together. GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) ("qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined"), *overruled on other grounds*, Randall v. Scott, 610 F.3d 701 (11th Cir. 2010); Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995).

## II. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,[1] to

---

[1] When analyzing a motion to dismiss, the court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp.,

3

'state a claim to relief that is plausible on its face.'"[2] Iqbal,
556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has
facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. The court
may not reasonably infer the defendant is liable when the well-
pleaded facts fail to show "more than the mere possibility of
misconduct." Id. at 679; see Patton v. Rowell, 678 F. App'x 898,
900 (11th Cir. 2017) ("factual allegations must be enough to raise
a right to relief above the speculative level") (citation omitted).


## III. DISCUSSION

Qualified immunity is a judicially created affirmative
defense under which "government officials performing discretionary
functions generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." Harlow, 457 U.S. at 818; Williams v. Bennett,
689 F.2d 1370, 1376-77 (11th Cir. 1982) (Eleventh Amendment has

---

466 F.3d 1255, 1261 (11th Cir. 2006). Conclusory allegations, however, "are
not entitled to an assumption of truth — legal conclusions must be supported by
factual allegations." Randall, 610 F.3d at 709-10.
[2] Although the Eleventh Circuit previously employed a "heightened pleading
standard" for "section 1983 cases where qualified immunity was at issue," Harper
v. Lawrence Cty., 592 F.3d 1227, 1233 (11th Cir. 2010), such cases are now "held
to comply with the standards described in Iqbal." Randall, 610 F.3d at 709-10
(11th Cir. 2010); see also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312,
1319 (11th Cir. 2016).

been applied to bar inmates' section 1983 damage claims brought in federal court against prison officials), *cert. denied*, 464 U.S. 932 (1983). For qualified immunity to apply, a public official first has to show she was "acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). To determine whether a government official was acting within the scope of her discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize."[3] Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Once a defendant establishes that she was "acting within [her] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley, 327 F.3d at 1194; see Bowen, 826 F.3d at 1319 (in reviewing Rule 12(b)(6) dismissal, Eleventh Circuit applied same burden-shifting analysis).

---

[3] In other areas, "a 'discretionary function' is defined as an activity requiring the exercise of independent judgment, and is the opposite of a 'ministerial task.' In the qualified immunity context, however, [the Eleventh Circuit] appear[s] to have abandoned this 'discretionary function/ministerial task' dichotomy." Holloman, 370 F.3d at 1265 (internal citation omitted). For purposes of qualified immunity, the Eleventh Circuit interprets "'discretionary authority' to include actions that do not necessarily involve an element of choice." McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995). A governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function. Id.

Plaintiff fails to respond to Defendant's conclusion that Defendant was acting within her discretionary authority. At any rate, the Court finds that Defendant was engaged in a job-related function when performing the official count, and unlocking doors to perform the count was authorized. Given the low standard required to establish discretionary authority, it is clear Defendant was acting in her discretionary authority.

Accordingly, the Court must look to the complaint to see if Plaintiff included sufficient facts demonstrating that Defendant is not entitled to qualified immunity.[4] Bowen, 826 F.3d at 1319. In doing so, the Court must consider two issues: (A) "whether, taken in the light most favorable to [Plaintiff], the facts alleged show [Defendant's] conduct violated a constitutional right, and ([B]) if so, whether the right was clearly established." Id. (internal quotation marks omitted).

---

[4] The Court notes that at the motion to dismiss stage, Plaintiff does not have the burden to prove the facts alleged are true; the Court accepts facts in the complaint as true. See Randall, 610 F.3d at 705. Plaintiff, however, must allege enough facts in the complaint to allow the Court to find that qualified immunity does not protect Defendant from this suit. Bowen, 826 F.3d at 1319 ("[T]he Twombly-Iqbal plausibility standard applies equally to pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense.") (internal quotation marks and citation omitted); Randall, 610 F.3d at 707 n.2 ("[C]omplaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.") (internal quotation marks and citation omitted).

## A. Constitutional Right

The Eighth Amendment[5] not only prohibits prison officials from inflicting "cruel and unusual punishment" upon inmates, but also imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). To guarantee inmate safety, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833; see also Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam). Although, officers can be liable for failing to prevent a prisoner-on-prisoner attack, not "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials responsible for the victim's safety." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (citations omitted); see also Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (internal quotation marks and citation omitted). Rather, "[o]nly a prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment."

---

[5] "The Eighth Amendment's ban on cruel and unusual punishment is made applicable to the states by virtue of the Fourteenth Amendment." Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003) (per curiam) (citing Robinson v. California, 370 U.S. 660, 666–67 (1962)).

*Culliver*, 746 F.3d at 1298 (internal quotation marks and citations omitted).

Consequently:

> [T]o state an Eighth Amendment claim premised on a failure to prevent harm, a plaintiff must allege facts showing that: (1) a substantial risk of serious harm existed; (2) the defendant[] [was] deliberately indifferent to that risk, i.e., [she] both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendant['s] conduct and the Eighth Amendment violation.[6]

*Bowen*, 826 F.3d at 1320.

### 1. Substantial Risk of Serious Harm

Courts apply an objective standard when determining if there is a substantial risk of serious harm. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Purcell*, 400 F.3d at 1321. A substantial risk exists if there is a "strong likelihood of injury, rather than a mere possibility." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (internal quotation marks and citation omitted); *see Purcell*, 400 F.3d at 1323 ("In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail.") (citations omitted).

---

[6] Neither Party challenges the causation element, and it is clear to the Court that there is a causal connection between Defendant's conduct and the alleged violation. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citations omitted) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

Examining Eleventh Circuit cases shows that, for a court to conclude that the officer was objectively aware of a substantial risk of serious harm, it must look to whether there are facts that would place the officer on notice of the risk. The fact that the violence occurred, on its own, is not enough for courts to find a substantial risk of harm. Brooks, 800 F.3d at 1301 ("The mere fact that an event takes place does not indicate how likely it was to occur. A risk calculation is a prospective determination of what might happen based upon events that have already occurred.").

In Marsh v. Butler Cty., the Eleventh Circuit upheld the denial of a motion to dismiss because the complaint alleged sufficient facts that, if true, established a substantial risk of inmate-on-inmate violence. 268 F.3d 1014, 1029 (11th Cir. 2001). To make the determination, the court examined the following host of jail conditions:

> 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 2) at times the [j]ail housed more prisoners than the cells could accommodate, 3) the [j]ail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the [j]ail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed,

9

> 10) the [j]ail was not operated in accordance with
> written policies, 11) inmates were not screened for
> mental health, medical conditions or conflicts with
> other prisoners before entering the [j]ail, and 12)
> prisoners were not disciplined or segregated when they
> attempted to escape, threatened jailers, destroyed
> property or assaulted other inmates.

Id. In Hale v. Tallapoosa Cty., the Eleventh Circuit determined that the plaintiff survived summary judgment by providing the following evidence of jail conditions: (1) prisoners "were not segregated based on their proclivity for violence," (2) there was only one jailer on duty, (3) the jailer's quarters "were out of earshot and eyesight of the bullpen," and (4) "fights occurred between inmates on a regular basis and occasionally resulted in injuries requiring medical attention and hospitalization." 50 F.3d 1579, 1581-84 (1995). But see Purcell, 400 F.3d at 1321-23 (finding no substantial risk after examining a host of factors, including adherence to staffing policy, jail history of inmate-on-inmate violence, segregation policies, and whether fights that did occur were linked to specific causes).

Lastly, in Harrison v. Borders, the court found that even though the officers violated policy by locking too many inmates in a single cell, that fact alone was "not enough to inform the [] [d]efendants that [the plaintiff] faced a substantial risk of serious harm." No. 508-cv-333-Oc-10GRJ, 2010 WL 375933, at *8 (M.D. Fla. Jan. 26, 2010). Other facts needed to show substantial risk of serious harm could have included "evidence of any prior

inmate[-]on[-]inmate violence at the [j]ail, . . . evidence of any inmate violence due to overcrowding[,] or complaints by [the plaintiff] himself." Id.

Plaintiff has offered no facts which could show the Court that there was a substantial risk of serious harm to Plaintiff. In the complaint, the only factual allegation supporting Defendant's failure-to-protect claim is that Defendant "opened the door to Dorm 3 while the door to Dorm 2 was open, allowing the inmate from Dorm 3 who eventually stabbed Plaintiff [] to gain access to Plaintiff [] in Dorm 2." (Compl., ¶ 7.) Because Defendant's failure to lock the door is the only fact Plaintiff provided, the complaint contains insufficient facts to show, objectively, a substantial risk of serious harm.

## 2. Deliberate Indifference

The second element — the defendant's deliberate indifference to the risk — has both a subjective and an objective component, in that it requires the plaintiff to produce evidence that the defendant: (1) "actually (subjectively) knew that an inmate faced a substantial risk of serious harm"; and (2) "disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." Caldwell, 748 F.3d at 1099 (citation omitted). To demonstrate the subjective component - actual knowledge of the substantial risk of serious harm - the plaintiff must show the defendant was "aware of facts from which the inference could be

11

drawn that a substantial risk of serious harm exist[ed], and he must also [show the defendant actually] dr[e]w the inference." Id. at 1099-1100; Marsh, 268 F.3d at 1029 (The officer's subjective awareness was shown through "faultfinding, inspection reports by state agencies, reports outlining the conditions that existed at the [j]ail; [] many complaints from prisoners and requests for assistance; [] correspondence from prisoners' lawyers detailing the staffing problems and warning of a 'serious threat to the safety of inmates'; and [] a lawsuit filed . . . on behalf of the inmates." The complaint also alleged the conditions were "longstanding and pervasive."). Indeed, "[n]o liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting Farmer, 511 U.S. at 838). Nevertheless, "[w]hether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert, 510 F.3d at 1327 (quoting Farmer, 511 U.S. at 842).

To demonstrate the objective component of the second element - disregard of the known risk - a plaintiff must show that the defendant "knew of ways to reduce the harm but knowingly . . . or

12

. . . . recklessly declined to act." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 620 (11th Cir. 2007) (citations omitted); see Marsh, 268 F.3d at 1029 (after finding officer was subjectively aware of risk based on conditions at jail, court found doing "nothing to alleviate the conditions . . . despite repeated warnings and recommendations for how conditions could be improved" was objectively unreasonable). Like the subjective component, "[d]isregard of the risk is also a question of fact that can be shown by standard methods." Goebert, 510 F.3d at 1327 (citation omitted).

Plaintiff has failed to show any facts that, if proven, show Defendant was subjectively aware of the risk posed to Plaintiff. Plaintiff does not have to show Defendant was aware of a specific threat from the Attacker, see Farmer, 511 U.S. at 843, however, Plaintiff is required to provide facts making it plausible that Defendant was subjectively aware of a substantial risk of serious harm, not just that Defendant was negligent in performing her duties.

To show Defendant's subjective awareness, Plaintiff argues:

The Defendant was aware that the reasoning behind closing the doors connecting Dorm 2 and Dorm 3 was to stop inmates from either Dorm from entering the other and in leaving the doors open that an inmate could in fact leave one dorm and enter another and cause chaos or injury in the dorm they entered. Therefore, Defendant was fully aware that in leaving the doors connecting Dorm 2 and Dorm 3 open that she was allowing an opportunity for an inmate from either Dorm 2 or 3 to

13

> enter the other Dorm and cause chaos or injury, as is
> exactly what happened . . . .

(Resp. to Mot. to Dismiss, Doc. 5, at 4.)  Plaintiff goes on to

summarize his argument by stating, "Defendant must have known []

Plaintiff was specifically at risk when her actions of leaving the

connecting doors open constituted a general risk to everyone in

the dorm in violation of her job duties that caused serious

physical injury to [] Plaintiff."[7]  (Id. at 5.)  Plaintiff does

not allege that Defendant unlocked the door in an unusual way with

the purpose of allowing this attack.  See Pavlick v. Mifflin, 90

F.3d 205, 209 (7th Cir. 1996) (finding officer subjectively aware

of risk when, right before attack, officer (1) seen talking to the

attackers and (2) unlocked the "cell (an unusual action in itself)

and promptly [left] the scene").  Plaintiff is, thus, employing

the argument that the risk in violating the rule to keep the

connecting doors closed "was obvious."  (Resp. to Mot. to Dismiss,

at 4.)

There is nothing in the complaint showing that Defendant

violated a work policy by failing to lock the door,[8] however, the

---

[7] In his complaint, Plaintiff also states the following conclusion of law which
the Court need not accept as true: Defendant "acted with reckless disregard"
and was "deliberately indifferent . . . in violation of the Eighth Amendment of
the Constitution and laws of the United States and the Constitution and laws of
the State of Georgia."  (Compl. ¶¶ 12, 13.)  These "mere recitations of the
legal elements of [Plaintiff's] Eighth Amendment claim" are insufficient to
show Defendant acted with deliberate indifference.  Bowen, 826 F.3d at 1324.
[8] In brief, however, Plaintiff states "Defendant failed to follow proper security
protocol by leaving the doors open during official count."  (Resp. to Mot. to
Dismiss, at 3.)

Court finds that even if she did, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000); see also Carter, 352 F.3d at 1350 ("Defendants arguably should have placed Plaintiff elsewhere but merely negligent failure to protect an inmate from attack does not justify liability under section 1983." (internal quotation marks and citation omitted)).

As stated by the Eleventh Circuit, "[T]he fact that the officers deviated from policy or were unreasonable in their actions — even grossly so — does not relieve [the plaintiff] of the burden of showing that the officers were subjectively aware of the risk." Goodman v. Kimbrough, 718 F.3d 1325, 1334 (11th Cir. 2013) (affirming application of qualified immunity when defendants failed to conduct head counts or cell checks and deactivated emergency call buttons without investigating because evidence was of negligence, not subjective awareness of risk). The Eleventh Circuit went on to state that a plaintiff may not maintain, "Well, they should have known," because, in accepting "that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law — a brand of negligence redux — which the Supreme Court has made abundantly clear it is not." Id. (citing Farmer, 511 U.S. at 838). Although subjective knowledge may be shown through circumstantial evidence that the

15

risk was obvious, Plaintiff must provide more than simply the Defendant was negligent.

Plaintiff also relies on an unpublished Eleventh Circuit case, Ekers v. Thrift, No. 03-14892, 112 F. App'x 2 (Table) (11th Cir. 2004) (per curiam). Ekers involved inmate-on-inmate violence, and the Eleventh Circuit vacated the district court's grant of summary judgment to the defendants because there were questions of fact over whether the officers violated a specific policy requiring strip searches and the use of metal detectors when an inmate exited his cell. (Id. at 9-10.) Unlike here, in Ekers, there was other evidence showing the officers acted with deliberate indifference, such as the plaintiff complaining to officers that the housing situation was dangerous, evidence that the officers knew the inmate who attacked the plaintiff was dangerous, and indications that the officers "did nothing to protect [the p]laintiff during the course of the attack." (Ekers v. Thrift, CV 602-001, R. & R., Doc. 76, at 6-7.)

Furthermore, even if, in Ekers, the Eleventh Circuit believed the failure to follow the specific strip-search, metal-detector policy was enough to show deliberate indifference, more recent, binding[9] cases establish that failure to follow policy is

---

[9] Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. Zurich Am. Ins. v. S.-Owners Ins., 248 F. Supp. 3d 1268, 1278 n.4 (citing United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curium)).

insufficient on its own. Goodman, 718 F.3d at 1334; see also A.P. ex rel. Bazerman v. Feaver, 293 F. App'x 635, 659 (11th Cir. 2008) ("[A]llegations that the officials failed to follow established departmental guidelines or procedures are tantamount to allegations of negligence[] and are insufficient to establish subjective knowledge of a strong likelihood of serious harm.").

Plaintiff must provide enough facts in his complaint for the Court to plausibly find Defendant was deliberately indifferent to a substantial risk of serious harm. Providing only evidence that Defendant failed to secure a dorm door, without any additional facts, is insufficient.

## B. Clearly Established

Even assuming Plaintiff established that Defendant was deliberately indifferent to Plaintiff's rights, Defendant is still entitled to qualified immunity unless the constitutional right violated was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001). To show a right is clearly established, Plaintiff must demonstrate that the contours of the Eighth Amendment were so clearly established at the time of the relevant violation that a reasonable official occupying Defendant's position would have understood that what they were doing violated Plaintiff's rights under the Eighth Amendment. See Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Court must look "to the decisions of the Supreme

Court, the Eleventh Circuit, and the Georgia Supreme Court" to determine whether "the state of the law in March [2017] gave [Defendant] fair warning that [her] conduct was unlawful." Bowen, 826 F.3d at 1325 (internal quotation marks and citation omitted).

For a previous case to provide officers with "clear warning that certain conduct in specific circumstances will violate federal law," the facts in the precedent and the present circumstances must be "materially similar."[10] Marsh, 268 F.3d at 1032. Because officers "are not obligated to be creative or imaginative in drawing analogies from previously decided cases," Fortson v. City of Elberton, 592 F. App'x 819, 822 (11th Cir. 2014), a case with facts that are "fairly distinguishable from the circumstances facing [a] government official cannot clearly establish the law . . . so, qualified immunity applies."[11] Vinyard v. Wilson, 311 F.3d 1340, 1352 (11th Cir. 2002).

If no past decision is applicable, Plaintiff must use the "obvious clarity" method, which requires showing that the officer's conduct "lies so obviously at the core of what the [Eighth] [A]mendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the

---

[10] The two are materially similar when "no reasonable, similarly-situated official could believe that the factual differences between the precedent and the circumstances facing the official *might* make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent." Marsh, 268 F.3d at 1032 (emphasis in original).
[11] In addition, "[c]ases from other lower federal courts cannot create clearly established law for qualified immunity purposes." JW ex rel. Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1263 (11th Cir. 2018).

lack of fact-specific case law." Birmingham Bd. of Educ., 904 F.3d at 1260; accord Dukes v. Bennett, No. 1:12-CV-2517-CAP, 2013 WL 12205583, at *2 (N.D. Ga. Apr. 3, 2013) (citation omitted) (In a case brought for use of excessive force, the court had "little trouble concluding that a police officer who tosses an incendiary device directly onto a sleeping person violates constitutional rules that are so clear that case law is not needed to establish the unlawfulness of such conduct."). The "obvious clarity" method "is a 'narrow exception' to the 'normal rule that only case law and specific factual scenarios can clearly establish a violation.'" Birmingham Bd. of Ed., 904 F.3d at 1260 (citation omitted). "The more general the statement of law is that puts the official on notice, the more egregious the violation must be before [the Eleventh Circuit] will find that the official is not entitled to qualified immunity." Goebert, 510 F.3d at 1330; see also Vinyard, 311 F.3d at 1351. An obvious violation of the Eighth Amendment occurs when a prison official denies an inmate "the minimal civilized measure of life's necessities." Spires v. Paul, No. 6:11-cv-45, 2018 WL 3544807, at *5 (S.D. Ga. May 25, 2018) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); see also LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

As set forth above, the Court must find that Defendant violated a clearly established constitutional right shown either through "materially similar" case law or, in the absence thereof,

by the "obvious clarity" method.  To show the right at issue was clearly established, Plaintiff states:

> The [c]omplaint which the Court must consider as true for the purposes of a motion to dismiss alleges that the actions of Defendant violated clearly established constitutional rights and the pre-existing law was apparent and its contours sufficiently clear that Defendant understood what she was doing in exposing Plaintiff to substantial risk of serious harm.  The [c]omplaint factually sets out the constitutional violation exposing the Plaintiff and everyone else in the dormitory to serious risk of injury and this constitutional right to be protected while incarcerated was clearly established in the Supreme Court of the United States precedent and the [Eleventh] Circuit precedent, thus the complaint properly sets that the Defendant is not entitled to qualified immunity.

(Resp. to Mot. to Dismiss, at 6.)  Plaintiff almost exclusively relies on his complaint to show the right was clearly established. The Court, however, does not have to accept as true conclusory allegations in the complaint; specifically, the following:

> The actions of the Defendant under color of [law] violated clearly established constitutional rights of which [she] knew or a reasonable person would have known. The pre-existing law was apparent and its contours sufficiently clear that [the Defendant] should have understood that what [she] was doing in exposing Plaintiff [] to substantial risk of serious harm by failing to protect Plaintiff [] from potential and the actual resulting attack by another inmate violated the Eighth Amendment of the Constitution and laws of the United States and the Constitution and laws of the State of Georgia.

(Compl., ¶ 14).

In brief, _Ekers_ is the only factual comparison Plaintiff offers.[12] The Court first notes that _Ekers_ is an unpublished case that is unavailable online; thus, non-binding and unable to place officers on notice of a clearly established constitutional violation. Second, as discussed above, _Ekers_ is factually distinguishable from the current case. Most importantly, the Eleventh Circuit did not decide whether there was a constitutional violation; it only vacated and remanded the case for the district court to reexamine.[13] On its own, the Court examined other cases and found no materially similar case sufficient to put Defendant on notice that the rights at issue were clearly established. Furthermore, precedent is clear that failing to follow policy is insufficient on its own to establish a constitutional violation, and Plaintiff does not show that Defendant's act could be

---

[12] Although not compared factually to the circumstance at hand, Plaintiff also cites the general proposition stated in _Farmer_. The Court finds _Farmer_ does not show that the constitutional right allegedly violated was clearly established. In _Farmer_, a transgender inmate, known to be vulnerable to sexual assault, was assaulted. 511 U.S. at 829-30. After the Supreme Court found facts sufficient to show the officers were aware that the plaintiff had previously been sexually assaulted many times, the Court stated: "[A] prison official may be held liable under the Eighth Amendment . . . if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." _Id._ at 847. Plaintiff offers no facts suggesting that Plaintiff was particularly exposed to any risk. _See_ _Diamond v. Owens_, 131 F. Supp. 3d 1346, 1379-80 (M.D. Ga. 2015). In fact, Plaintiff argues Defendant's actions posed the same risk to everyone in the dormitory (Resp. to Mot. to Dismiss, at 6), not that Plaintiff was at a heightened risk. Thus, _Farmer's_ general statement of law does not clearly establish Plaintiff's constitutional right.

[13] On remand, the case went to trial, and the jury returned a verdict in favor of the defendants. (_Ekers v. Thrift_, CV 602-001, Judgment, Doc. 125.)

considered an "obvious" violation of the Eighth Amendment. Therefore, the Court fails to find a clearly established right.

The Court recognizes that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim . . . may be hard to identify" because "whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." Pearson v. Callahan, 555 U.S. 223, 238-39 (2009) (citation omitted). Taking note of the plausibility standard, the lack of any factual allegations allowing the Court to find Defendant was deliberately indifferent, and the absence of a clearly established right, the Court is compelled to find Defendant is entitled to qualified immunity.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 4) is **GRANTED,** and Plaintiff's case is **DISMISSED**. The Clerk is directed to **TERMINATE** all motions and deadlines and close this case.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of March, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA